IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RODNEY HODGES,                    )    CIVIL 12-00420 LEK-BMK
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
CGI FEDERAL DEFENSE &             )
INTELLIGENCE, John Martinez,      )
Dan Geltmacher and Ray Mabus,     )
Secretary, Dpt. of the Navy,      )
                                  )
          Defendants.             )
_____ )


**ORDER GRANTING DEFENDANT RAY MABUS'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT CGI FEDERAL INC.'S
<u>MOTION FOR SUMMARY JUDGMENT AND DISMISSAL</u>**

          Before the Court are: Defendant Secretary, Department

of the Navy, Ray Mabus's ("Mabus") Motion for Summary Judgment

and Dismissal ("Mabus Motion"), filed on June 24, 2014; and

Defendant CGI Federal Inc.'s ("CGI") Motion for Summary Judgment

("CGI Motion", collectively "Motions"), filed June 25, 2014.[1]

[Dkt. nos. 93, 96.]  On September 8, 2014, Plaintiff Rodney

Hodges ("Plaintiff") filed his memorandum in opposition to the

Mabus Motion, and his memorandum in opposition to the CGI Motion.

_____

          [1] CGI notes that it was misnamed in the caption of this case
as "CGI Federal Defense & Intelligence."  [Mem. in Supp. of CGI
Motion at 1 n.1.]  The Court will refer to it throughout as
"CGI."  Stanley Associates, Inc. ("Stanley"), which employed
Plaintiff Rodney Hodges ("Plaintiff"), is a wholly-owned
subsidiary of CGI.  There is no dispute that CGI is liable for
acts taken by Stanley during the time period at issue, and thus
the Court refers to them both as CGI, except in those instances
where it would not make sense to refer to Stanley as CGI.

[Dkt. nos. 100, 104.]  On September 15, 2014, Mabus filed his

reply, and CGI filed its reply.  [Dkt. nos. 109, 110.]  These

matters came on for hearing on September 30, 2014.  After careful

consideration of the Motions, supporting and opposing memoranda,

and the arguments of counsel, the Motions are HEREBY GRANTED for

the reasons set forth below.

## BACKGROUND

On June 10, 2013, Plaintiff filed his Second Amended

Complaint for Damages ("Second Amended Complaint") against Mabus,

in his official capacity for the United States Department of the

Navy ("the Navy"), CGI, and Master Sergeant John Martinez

("Martinez") and Dan Geltmacher ("Geltmacher"), who are employed

by the Navy and coordinate with military contractor CGI at the

Kaneohe Marine Corps Base Hawai`i ("MCBH").[2]  [Dkt. no. 53.]

Plaintiff, an African-American and a former marine, was

employed by military contractors as a Weapons Range Safety

Specialist ("RSS") at MCBH from 2007 to 2011 and, specifically,

by CGI from 2010 to 2011.  [Second Amended Complaint at ¶¶ 1-2.]

Plaintiff alleges that his second-level supervisor, Geltmacher,

_____

[2] On February 3, 2014, the Court approved a stipulation
dismissing with prejudice all of the claims against Martinez and
Geltmacher.  [Dkt. no. 83.]  In that stipulation, Mabus agreed
not to assert the defenses that: Plaintiff was not a federal
employee; and he had not exhausted his administrative remedies.
The Court will, therefore, refer to CGI and Mabus collectively as
"Defendants."

who is Caucasian: issued him an unfavorable and unwarranted evaluation; was instrumental in CGI putting Plaintiff on a Performance Improvement Program ("PIP"); retaliated against Plaintiff for questioning purportedly unauthorized safety changes made by Geltmacher; and had Plaintiff wrongfully terminated.  He also alleges that his direct supervisor, Martinez, who is Hispanic: discriminated against him by requiring that he work late while other Caucasian employees attended a dinner with the secret service, and forcing Plaintiff, the only African American in his position on the evening shift, to do undesirable tasks that he refers to as "dirty work" like moving furniture; retaliated against him for filing a harassment complaint on behalf of a female colleague; and conspired to have him terminated for arriving at work late, while his Caucasian counterpart from another military contractor, Michael Stinson, who was also late, was thereafter hired by CGI.  [Id. at ¶¶ 14-54.]

The Second Amended Complaint alleges the following claims: (1) discrimination in violation of 42 U.S.C. § 1981 against Defendants ("Count I"); (2) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1, *et seq*. ("Count II"); (3) discrimination in violation of Haw. Rev. Stat. § 378-2 ("Count III"); (4) retaliation against a whistleblower in

violation of Haw. Rev. Stat. § 378-62 ("Count IV"); and

(5) violation of constitutional rights, including his First and

Fifth Amendment Rights ("Count V").[3]

Plaintiff seeks the following relief: a declaratory

judgment that his rights were violated; preliminary and permanent

injunctions against Defendants to desist from discrimination;

reinstatement of Plaintiff to his job; compensatory, special,

statutory, liquidated, exemplary and punitive damages; attorneys'

fees and costs; and all other appropriate relief. [Id. at pgs.

27-28.]

## **DISCUSSION**

### I.   **Discrimination & Retaliation Claims: Counts I, II & III**[4]

A plaintiff may establish a discrimination or

retaliation claim through direct or circumstantial evidence.

Rashdan v. Geissberger, 764 F.3d 1179, 1183 (9th Cir. 2014) (some

---

[3] On February 12, 2014, the Court approved a stipulation, dismissing with prejudice Count IV. [Dkt. no. 85.]

[4] The Court here notes that it likely does not have jurisdiction over Count I as to Mabus because the federal government may be immune from suit under § 1981. See Gottschalk v. City & Cnty. of San Francisco, 964 F. Supp. 2d 1147, 1162 (N.D. Cal. 2013) (extending immunity from suit under 42 U.S.C. § 1983 to § 1981 claims), appeal dismissed, (9th Cir. Jan. 16, 2014); see also Ardalan v. McHugh, Case No.: 13-CV-01138-LHK, 2013 WL 6212710, at *12 (N.D. Cal. Nov. 27, 2013) (adopting reasoning from Gottschalk).  The issue is not determinative here since the Court finds that Plaintiff has failed to raise any genuine issues of material fact as to his discrimination and retaliation claims. See supra.

citations omitted) (citing <u>Tex. Dep't of Cmty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207

(1981)). "Direct evidence typically consists of clearly sexist,

racist, or similarly discriminatory statements or actions by the

employer." <u>Coghlan v. Am. Seafoods Co. LLC.</u>, 413 F.3d 1090, 1095

(9th Cir. 2005).

Where, as here, a plaintiff does not offer direct

evidence of racism, courts apply the burden-shifting analysis set

forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). <u>See,</u>

<u>e.g.</u>, <u>Dawson v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir. 2011)

(Title VII retaliation); <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d

1151, 1155 (9th Cir. 2010) (Title VII discrimination). Burden-

shifting also applies to discrimination claims under Haw. Rev.

Stat. § 378-2 and 28 U.S.C. § 1981. <u>See</u> <u>United Steel Workers</u>

<u>Local 12-369 v. United Steel Workers Int'l</u>, 728 F.3d 1107, 1118

(9th Cir. 2013) (§ 1981); <u>Schefke v. Reliable Collection Agency,</u>

<u>Ltd.</u>, 96 Hawai`i 408, 425, 32 P.3d 52, 69 (2001) (§ 378-2).

Regarding <u>McDonnell Douglas</u> burden-shifting, the Ninth

Circuit has held:

> Under this analysis, plaintiffs must first
> establish a prima facie case of employment
> discrimination. <u>Noyes v. Kelly Servs.</u>, 488 F.3d
> 1163, 1168 (9th Cir. 2007). If plaintiffs
> establish a prima facie case, "[t]he burden of
> production, but not persuasion, then shifts to the
> employer to articulate some legitimate,
> nondiscriminatory reason for the challenged
> action." <u>Chuang v. Univ. of Cal. Davis, Bd. of</u>

5

> <u>Trs.</u>, 225 F.3d 1115, 1123–24 (9th Cir. 2000). If
> defendant meets this burden, plaintiffs must then
> raise a triable issue of material fact as to
> whether the defendant's proffered reasons for
> their terminations are mere pretext for unlawful
> discrimination. <u>Noyes</u>, 488 F.3d at 1168; <u>see also</u>
> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1282
> (9th Cir. 2000) (plaintiffs must "introduce
> evidence sufficient to raise a genuine issue of
> material fact" as to pretext).

<u>Hawn</u>, 615 F.3d at 1155-56 (alteration in <u>Hawn</u>).

In making a prima facie case, Plaintiff must offer

"'evidence that gives rise to an inference of unlawful

discrimination.'" <u>Johnson v. City & Cnty. of San Francisco</u>,

12-15998, 2014 WL 3642249, at *2 (9th Cir. July 24, 2014)

(quoting <u>Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 640 (9th

Cir. 2003)). But, "[a] conclusory, self-serving affidavit,

lacking detailed facts and any supporting evidence, is

insufficient to create a genuine issue of material fact."

<u>Nilsson v. City of Mesa</u>, 503 F.3d 947, 952 (9th Cir. 2007)

(alteration in <u>Nilsson</u>) (citation and internal quotation marks

omitted). For instance, in one case, the Ninth Circuit held:

> [The plaintiff] asserts that several of these
> incidents occurred in 'late 1998' or 1999.
> However, he offers no support for these asserted
> dates other than his declaration. Indeed, he
> offers no specific dates for any of the actions.
> [The plaintiff's] conclusory allegations,
> unsupported by facts, are insufficient to survive
> a motion for summary judgment. [The defendant]
> therefore is entitled to summary judgment on [the
> Plaintiff's] failure to promote claims.

<u>Hernandez v. Spacelabs Med. Inc.</u>, 343 F.3d 1107, 1116 (9th Cir.

2003) (citation omitted).

A.  **Disparate Treatment**

This district court has explained:

> Plaintiffs may establish a prima facie case based
> on circumstantial evidence by demonstrating:
> (1) that they belong to a class of persons
> protected by Title VII; (2) that the plaintiffs
> were qualified for their positions and performing
> their jobs satisfactorily; (3) that they
> experienced adverse employment actions; and
> (4) that similarly situated individuals outside of
> their protected class were treated more favorably,
> or other circumstances surrounding the adverse
> employment action giving rise to an inference of
> discrimination.

E.E.O.C. v. Global Horizons, Inc., 904 F. Supp. 2d 1074, 1087 (D.

Hawai`i 2012) (some citations omitted) (citing Hawn, 615 F.3d at

1156; McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817); see

also Furukawa v. Honolulu Zoological Soc., 85 Hawai`i 7, 13 n.3,

936 P.2d 643, 649 n.3 (1997) (applying similar elements to a

§ 378-2 discrimination claim); Fonseca v. Sysco Food Servs. of

Arizona, Inc., 374 F.3d 840, 847, 850 (9th Cir. 2004) (same as to

§ 1981 claim).

Plaintiff has established a prima facie case as to the

first and third elements.  It is undisputed that he is African

American, and that he experienced adverse employment actions, for

example, being put on the PIP and, ultimately, terminated.

Plaintiff has not, however, established a prima facie case as to

the second and fourth elements.

7

First, the evidence shows that, while he was qualified

for the position, see, e.g., Pltf.'s Concise Statement of Fact in

Opposition to Defendant Mabus Concise Statement ("Pltf.'s Mabus

CSOF"), filed 9/8/14 (dkt. no. 101),[5] Decl. of Rodney Hodges

("Hodges Decl."), Exh. 1 (Certificate of Release or Discharge

from Active Duty, describing Plaintiff's military career),

Plaintiff was not performing satisfactorily prior to the PIP and

his termination.  As early as 2008, Geltmacher attests, he

received at least three complaints about Plaintiff, specifically

that he was slowing down trainings for the Marines on the range

due to "unfounded safety concerns."  [Mabus's Concise Statement

of Fact ("Mabus CSOF"), filed 6/24/14 (dkt. no. 94), Decl. of

Daniel S. Geltmacher ("Geltmacher Decl.") at ¶ 6.]  In late 2009,

Geltmacher gave Plaintiff an unsatisfactory rating in at least

one category on an evaluation for "some interpersonal

relationship issues[.]"  [Geltmacher Decl., Exh. 4 (November 2009

email chain between Geltmacher, Plaintiff's supervisor at CGI

(Shaun Sullivant), and others).]

Geltmacher and Martinez both attest that, over the

months following Martinez's assignment as Plaintiff's supervisor

---

[5] Plaintiff offers the same declaration and exhibits
attached to both his Mabus CSOF and his Concise Statement of Fact
in Opposition to Defendants CGI Motion for Summary Judgment
("Pltf.'s CGI CSOF"), filed 9/18/14 (dkt. no. 105).  The Court
therefore will refer throughout solely to the version attached to
the Mabus CSOF.

in April 2010, Plaintiff repeatedly questioned range safety procedures and Martinez's and Geltmacher's authority to make range safety related decisions. [Geltmacher Decl. at ¶ 8; Mabus CSOF, Decl. of Sergeant John Martinez ("Martinez Decl.") at ¶ 4.] Even after both Martinez and Range Officer in Charge John Law spoke with Plaintiff, addressed his concerns, and showed him the relevant document granting Geltmacher authority, Plaintiff persisted. [Geltmacher Decl. at ¶ 9; id., Exh. 7 (Dept. of the Army Pamphlet 385-63 Range Safety) at USMC000859, 1-6c(6) ("the [Range Control Officer] is the final authority regarding the use of training facilities . . .").] Geltmacher states that the repeated challenges were a "significant distraction from [the] mission of training Marines for combat." [Geltmacher Decl. at ¶ 9.]

On March 21, 2011, Plaintiff and Martinez had a conflict regarding an administrative task that Martinez required Plaintiff to do that escalated to a shouting match ("March 21 Incident"). Martinez gave Plaintiff a written counseling for "unprofessionalism," which Plaintiff signed, and Martinez transmitted it to Sullivant and Geltmacher. [Martinez Decl., Exh. 2 (Employee Annual Performance Evaluation form, dated 3/22/11 ("March 22 Counseling"));[6] id. at ¶ 8.] In it, Martinez

---

[6] CGI offers a version of the March 22 Counseling as an
(continued...)

wrote that, during the dispute, Plaintiff told him that

"paperwork [was] not part of his job," which two other employees

also overheard.[7]  [March 22 Counseling at USMC000009.]  Martinez

also wrote that the March 21 Incident was but one of the

"numerous arguments or confrontations with me in regards to what

I can or cannot make him do under his Scope of Work."  [Id.]

As a result of the March 21 Incident, Sullivant and

Geltmacher elected to implement the PIP for Plaintiff.

[Geltmacher Decl. at ¶ 10.]  CGI employee John Beiswanger sent

the PIP to Plaintiff by email, writing, "we need to see a very

different approach to your job as we have highlighted.  None of

us want this to escalate any further and I trust that you will

return to the conscientious team player that epitomized your

Marine Corps career."  [Id., Exh. 6 ("PIP") at USMC000218.]  In

---

[6](...continued)
attachment to Martinez's Response to Defendant CGI's First
Request for Admissions ("Martinez's Response to CGI's RFAs").
[CGI's Concise Statement of Material Facts in Support of Its
Motion for Summary Judgment ("CGI CSOF"), filed 6/25/14 (dkt. no.
97), Decl. of Malia E. Kakos ("Kakos Decl."), Exh. 20 at
GM000105-08.]  Plaintiff also offers the last page of the March
22 Counseling as Exhibit 5 to his declaration.  The Court refers
herein to the complete version offered by Mabus and CGI.

[7] Mabus attaches statements by Stinson and Sergeant Michael
Howell, stating that they were present and overheard Plaintiff
refusing to do the task.  [March 22 Counseling at USMC001354,
USMC001359.]  CGI attaches them as well.  [Kakos Decl., Exh. 20
(Def. John Martinez's Response to Def. CGI's First Request for
Admissions) at CGI000499, CGI000504.]  As Plaintiff points out,
these statements are not signed or sworn under penalty of
perjury, and so the Court gives them limited weight.

the PIP, Sullivant wrote,[8] *inter alia*:

As a Range Safety Specialist you have not been able to:

- Communicate effectively with your customer.

- Follow simple instructions to complete tasks.

- Exercise good judgment in the workplace.

- Remain tactful towards customer and other employees.

**Expectations**

Your performance has been critical to the success of Range Management aboard MCB Hawaii. It directly affects Stanley's reputation, credibility with the USMC customer, and ultimately the success of this business unit.

As a Range Safety Specialist, the following corrective action is highly recommended:

- Open clear lines of communication with your customer and other employees.

- Complete tasks as assigned in an accurate and timely manner.

- Utilize sound judgement and tact at all times.

- You are expected to complete all assigned tasks with a level of quality and satisfaction expected from an individual in your position.

- You are to be professional and respectful

---

[8] Although the revised version attached as part of Exhibit 6 states that it is from Sullivant, it is not signed. [PIP at USMC000219-20.] Plaintiff does not dispute that he received it.

at all times.

[Id. at USMC000219.]  Further, Sullivant wrote: "Failure to show immediate and sustained improvement with your overall performance at anytime during this plan period or after, will subject you to further disciplinary action, up to and including termination of your employment."  [Id.]

However, two incidents over the ensuing months led Geltmacher to ask Sullivant to remove Plaintiff from working at MCBH.  [Geltmacher Decl. at ¶¶ 11-12.]  The first was an incident on May 2, 2011, communicated to Geltmacher by Martinez, in which Plaintiff and Stinson arrived an hour and a half late to work ("May 2 Incident"); Stinson apologized, while Plaintiff challenged Martinez regarding his schedule.  [Id. at ¶ 11; Martinez Decl. at ¶ 9, Exh. 3 (May 2011 email chain including emails between Plaintiff, Martinez, Geltmacher, and Sullivant, among others ("Tardiness Email")).]  The second, also communicated in the Tardiness Email, was Plaintiff's renewed challenges to safety procedures and Geltmacher's and Martinez's authority.  [Geltmacher Decl. at ¶ 11; Martinez Decl. at ¶ 9; Tardiness Email.]

This behavior was consistent with what his supervisors saw as unprofessional and insubordinate behavior, which had lasted over a period of time.  See, e.g., Kakos Decl., Exh. 5 (1/17/12 Decl. of Shaun Sullivant ("1/17/12 Sullivant Decl.") at

¶ 14 (stating that Plaintiff repeatedly challenged Martinez's authority and only acquiesced when given a direct order by Sullivant); id., Exh. 8 (Excerpts of Trans. of 4/1/14 Depo. of Daniel Geltmacher) at 58 (testifying that Martinez complained to him that Plaintiff "displayed a poor, unprofessional attitude, argumentive [sic], disruptive in the workplace"), 59 (describing arguments with Plaintiff and Plaintiff's "open contempt" for Martinez's directives); id., Exh. 18 (Excerpts of Trans. of 4/2/14 Depo. of John Martinez) at 43 (testifying that he talked to Plaintiff numerous times about his "being argumentative," and stating that Plaintiff "just was rude to people"); id., Exh. 19 (Martinez's Response to CGI's First Request for Answers to Interrogatories ("Martinez's Interrog. Resps.")) at Resp. 2 (describing performance deficiencies and Martinez's "numerous" counselings of Plaintiff).

Plaintiff argues that his performance was satisfactory. He attests that he never received a poor performance review prior to Martinez's assignment as his supervisor, and he was always rehired when his various prior contracts were up. [Hodges Decl. at ¶ 29; id., Exh. 3 (compilation of satisfactory evaluations from 2007, 2008 and 2009).]

However, Plaintiff does not offer any evidence to create a genuine issue of material fact as to whether he was performing his job satisfactorily in 2010 and 2011. He does not

deny the complaints described by Geltmacher and Martinez, and concedes that he challenged his supervisors.  <u>See, e.g.</u>, Hodges Decl. at ¶¶ 9 ("I questioned [Martinez] and [Sullivant] about this new dress code . . . ."), 12 ("I complained about Corp. men not being present for HUMVEE exercise, and asked to see the assumption of Command and whether there were waive requirements [sic] on the Range."); <u>see also</u> Mem. in Opp. to Mabus Motion at 8-9 (citing fourteen separate pages from his deposition where he discussed his complaints).  Rather than offer evidence denying his repeated challenges to his supervisors' authority, he argues that he was just doing his job in reporting unsafe conditions and that he was right to do so.  <u>See, e.g.</u>, Mem. in Opp. to CGI Motion at 32 ("Plaintiff did his job and knew the rules and regulations well.  It is only when he began to complain about range safety which is part of his job that his supervisor through Msgt. Martinez instigation, viewed his complaints 'unprofessional'."); Mem. in Opp. to Mabus Motion at 30 ("Plaintiff was merely doing his job as RSS toe [sic] ensure safety of the Range.  One of his complaints was deemed correct by the Base Inspector." (citing Exh. 15 ("Disposition of Complaint")).[9]]  Thus, he does not attempt to rebut Geltmacher's

---

[9] While Plaintiff is technically correct, that "one of the complaints was deemed correct," the others were rejected and, overall, the Lieutenant Colonel found that the violations were
(continued...)

statement that Plaintiff's challenges to Geltmacher's authority were a "significant distraction from [the] mission of training Marines for combat," [Geltmacher Decl. at ¶ 9,] other than a citation to his job description, which generally states that his responsibilities include "planning, developing, and supporting installation level range safety program . . . ." [Hodges Decl., Exh. 2].

Instead, Plaintiff offers evidence to show that: he was not insubordinate during the March 21 Incident; [Hodges Decl. at ¶¶ 17 (stating that he "recommended [Martinez] ask Ssgt. Howell to update the roster because the roster was on his computer which was locked"), 18 (stating that he completed the task the following day);] and he was correct to arrive to work when he did on May 2, 2014 [id., Exhs. 9 (prior work schedule with start times), 10 (May 2-6 work schedule without start times), 11 (signed statement by Stinson ("May 2 Stinson Statement")), stating that "[d]ue to the fluctuations in our schedules, somehow we both confused the dates").[10]

---

[9](...continued)
"unsubstantiated" and the "range procedures, rules and regulations [were] being adhered to." [Disposition of Complaint at CGI00491.]

[10] The Court notes, however, that in the May 2 Stinson Statement, Stinson writes that, after arrival, "we became aware of our mistake." As opposed to Plaintiff, Stinson did not persist in challenging Martinez as to who was in the right
(continued...)

Presumably, Plaintiff focuses on these incidents because they were the events that immediately preceded the PIP and his termination.[11]  However, he concedes that Sullivant told him he was terminated "because of poor work performance[,]" not simply because he was late once or had a single altercation with Martinez.  Hodges Decl. at ¶ 27; see also id., Exh. 14 at 1 (Geltmacher writes to Sullivant, "I would like to remove Mr. Hodges from the Marine Corps Base Hawaii range operations/control facility as soon as possible.  His conduct is no longer acceptable to me, the range chief or the range control OIC.").  Nor does Plaintiff offer evidence to support any argument that he was wrongly put on the PIP.  Rather, he argues that, once put on the PIP, he was entitled to a thirty-day review, and states he called Sullivant "daily to see if there were other complaints" and was told he was "doing well."[12]  [Hodges Decl. at ¶ 24.]

---

[10](...continued)
regarding the May 2 Incident.

[11] For example, Plaintiff offers a copy of the Tardiness Email to contrast Martinez's email stating that "Rodney is back to his tactics" with his own statement that he had never been late before to show pretext and wrongful discharge.  [Hodges Decl., Exh. 14 (compilation of May 2011 emails) at 1.]  However, the email, in its entirety, shows that Martinez is referring to Plaintiff's insubordination as "his tactics," and not the tardiness itself.

[12] Plaintiff also appears to argue that the PIP was a pretext by which Martinez could force him out of his job, by citing to an email in which Martinez writes to Sullivant, "Can
(continued...)

Taken together, and viewed in the light most favorable to Plaintiff, Plaintiff does not offer evidence to create a genuine issue of material fact that he was performing his job duties satisfactorily in 2010 and 2011. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (stating that, at summary judgment, the court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)).

As to the fourth element, Plaintiff does not provide evidence that any similarly situated non-African American employees were treated more favorably. Most problematic to his claim, Plaintiff does not offer any evidence that any of his colleagues consistently challenged Martinez and Geltmacher and were not terminated, which is what the law requires. See Hawn, 615 F.3d at 1157 (holding that "individuals are similarly situated when they have similar jobs and **display similar conduct**," and describing cases finding dissimilarity of conduct

<hr>

¹²(...continued)
you tell me what the policy is for firing a person inside your company please?" [Hodges Decl., Exh. 6.] However, from earlier emails in the chain, it appears that Sullivant and Geltmacher had already initiated adverse actions. [<u>Id.</u> (Sullivant writes, "I have pinged Dan [Geltmacher] and need him to be more specific as to his intentions. Once I get a reply back, the package will go to our Legal department.").]

(emphasis added)).  At most, Plaintiff merely states that he was

treated differently when he "questioned unsafe behaviors on the

range."  [Hodges Decl. at ¶ 12.]

Rather, Plaintiff's evidence of purported disparate

treatment consists of the following:

- Examples of times that Martinez treated women differently than
    he treated men.  [Hodges Decl. at ¶¶ 8 (stating that when
    RSS Tanner Karabin started at MCBH, Martinez assisted her in
    getting her a Common Access Card and drove her home), 11
    (Martinez allowed Sergeant Morningstar to wear shorts, while
    he enforced a dress code for men).]

- Plaintiff's colleagues were invited to a dinner when agents
    from the Secret Service were visiting, while he was left to
    work on the range.  [Id. at ¶ 14.]

- Allegations that he alone was forced to do undesirable tasks
    such as mow the lawn, pick up trash, and investigate an
    accident at the adjacent training ground (Bellows), while
    others were not.  [Id. at ¶ 15.]

- When he was late a single time, Plaintiff was terminated, while
    Stinson was hired by CGI to replace him.  [Id. at ¶ 28.]

However, none of these facts create a genuine issue of

material fact as to disparate treatment.  First, Plaintiff brings

a claim for racial discrimination, not gender discrimination,

[Reply, Decl. of Malia E. Kakos ("Kakos Reply Decl."), Exh. 27

(Pltf.'s HCRC Charge of Discrimination),] so even if Martinez

treated women better than men, it provides no support for

disparate treatment based on race.  Regarding the "dirty work,"

Plaintiff himself testified that Martinez "had his little crew

that he would pick on to go outside the gate" to pick up trash,

which included Morningstar and Stinson, and agreed that there was nothing disagreeable about going to Bellows.[13] [Mabus CSOF, Exh. 5 (Mabus Excerpts of Trans. of 2/5/14 Depo. of Rodney Hodges) at 170-72, 199.]

What is left is the Secret Service dinner, and the fact that Stinson was not fired for arriving late to work. Even if this was sufficient to find disparate treatment, Defendants have offered legitimate rationale for that treatment. First, Martinez testified that the Secret Service, and not he, invited Plaintiff's colleagues to the dinner, and they did not include Plaintiff because he did not help with the Secret Service training. [Pltf. Mabus CSOF, Decl. of Counsel ("Barbee Decl."), Exh. 19 (Pltf.'s Excerpts of Trans. of Martinez Depo.)[14] at 78 ("He did not participate in any of the Secret Service events."), 116 ("I did not invite anyone to that dinner").] Regarding Stinson, as described above, Plaintiff was not terminated for arriving late, but rather for insubordination, which was apparent

_____

[13] There is other undisputed evidence to negate disparate treatment between Plaintiff and African Americans colleagues, on one hand, and non-African American colleagues, on the other. For instance, Geltmacher recommended hiring and then promoted another African American man – Dinell Savage – and recommended for hire Mark Robinson, who is African American. [Geltmacher Decl. at ¶ 13.] And Plaintiff testified that Robinson was treated better than him. [Kakos Reply Decl., Exh. 23 (CGI Excerpts of Trans. of 2/5/14 Depo. of Rodney Hodges) at 199-200.]

[14] Plaintiff provides an undated and uncertified version of the Martinez deposition.

during the May 2 Incident from the different responses of Plaintiff and Stinson upon arriving late to work.  <u>Compare</u> May 2 Stinson Statement ("we became aware of our mistake"); <u>with</u> Hodges Decl. at ¶ 25 ("There was no written work schedule from Msgt Martinez telling me what time to arrive to work.").  Even in the light most favorable to Plaintiff, there is no genuine dispute of fact as to disparate treatment.

Clearly, Plaintiff had a successful career in the military and was effective working for a military contractor.  Also clear is that Plaintiff and Martinez, his supervisor, did not mesh well.  Tension and disagreement in the workplace lead to trying, difficult, and hurtful experiences.  This, however, is not sufficient to maintain a claim for disparate treatment.  Since there is no genuine issue of material fact that Plaintiff can make a prima facie case for discrimination on the basis of race, the Court GRANTS the Motions as to Plaintiff's discrimination claims against both Mabus and CGI.[15]

_____

[15] Further, as described above, even if Plaintiff could make a prima facie case, Defendants have offered evidence of a legitimate non-discriminatory purpose for putting Plaintiff on the PIP and terminating him, namely he was insubordinate, which Plaintiff offers no evidence to rebut.  Moreover, Plaintiff has not offered evidence to negate the same actor presumption, since Geltmacher and Sullivant were both instrumental in hiring Plaintiff and terminating him.  <u>See</u> <u>Coghlan</u>, 413 F.3d at 1096 ("where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that
(continued...)

**B.   Hostile Work Environment**

     "The Supreme Court has held that '[w]hen the workplace

is permeated with discriminatory intimidation, ridicule, and

insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive

working environment, Title VII is violated.'"  Dominguez-Curry v.

Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005)

(alteration in Dominguez-Curry) (quoting Harris v. Forklift Sys.,

Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

> "[T]he working environment must both subjectively
> and objectively be perceived as abusive."  [Fuller
> v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.
> 1995)] (citing Harris v. Forklift Sys., Inc., 510
> U.S. 17, 20-21, 114 S. Ct. 367, 126 L. Ed. 2d 295
> (1993).  Objective hostility is determined by
> examining the totality of the circumstances and
> whether a reasonable person with the same
> characteristics as the victim would perceive the
> workplace as hostile.  Id.  Finally, to find a
> violation of Title VII, "conduct must be extreme
> to amount to a change in the terms and conditions
> of employment."  Faragher [v. City of Boca Raton],
> 524 U.S. [775,] 788, 118 S. Ct. 2275 [(1998)]; see
> also Fuller, 47 F.3d at 1527.

Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir.

2007) (some alterations in Craig).  "Factors a court may consider

are the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere

_____

     [15](...continued)
there was no discriminatory action" (citation omitted)).

21

offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (citation and internal quotation marks omitted).

The Ninth Circuit has held:

> To establish a prima facie case for a hostile-work environment claim, [a plaintiff] must raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008); see also Arquero v. Hilton Hawaiian Vill. LLC, 104 Hawai`i 423, 428, 91 P.3d 505, 510 (2004) (applying similar elements to § 378-2 hostile work environment claim).

The only evidence of "verbal or physical conduct based on race" is in an email chain between Sullivant and Beiswanger from May 3, 2011, in which the two discussed the procedure for Plaintiff's termination. In one email, Beiswanger asks, "Any word on our boy?" [Hodges Decl., Exh. 15 at CGI001424.] The Court agrees that this term, in this context, could conceivably be racially-charged and, if so, it is tasteless and regrettable. However, it is but a single remark and not "sufficiently severe or pervasive" to create a hostile work environment. See Surrell, 518 F.3d at 1108; Reynolds v. City & Cnty. of San Francisco, 576

F. App'x 698 (9th Cir. 2014) (holding that a single "statement does not clearly indicate animus on the basis of gender or sexual orientation and at most amounts to a stray remark" (citing Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1438 (9th Cir. 1990)).

In general, Plaintiff may be correct that his experience as an RSS at MCBH changed after Martinez's assignment there, and that Martinez may have been partly at fault. There is evidence in the record that Martinez comported himself with bad judgment, [Barbee Decl., Exh. 21 (administrative remarks and addendum, dated 2/18/10, providing reasons for a counseling of Martinez for, *inter alia*, being inappropriate with wives of Marines who were deployed or killed in action),] and was unfair and vindictive at times [Hodges Decl., Exh. 6 (email regarding policy for firing an employee at CGI)]. However, there is no evidence that he was racist or that he or Geltmacher (or Sullivant) engendered a hostile work environment on the basis of race. As this Court has explained in the past,

> "Title VII is not 'a general civility code for the American workplace.'" Jura v. Cnty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Hawaii Oct. 17, 2012) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). Moreover, "'personal animosity is not the equivalent of sex [or race] discrimination,' and a plaintiff 'cannot turn a personal feud into a sex [or race] discrimination case.'" Id. (quoting Succar v. Dade Cnty. Sch. Bd., 229 F.3d 1343, 1345 (11th

Cir. 2000)).

Phillips v. Mabus, Civil No. 12-00384 LEK-RLP, 2013 WL 4662960, at *19 (D. Hawai`i Aug. 29, 2013) (alteration in Phillips).  The Court thus GRANTS the Motions insofar as Plaintiff fails to raise a genuine issue of material fact as to a hostile work environment on the basis of race.

####    C.    **Retaliation**

"To establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." Dawson, 630 F.3d at 936 (9th Cir. 2011); Hale v. Hawaii Publ'ns, Inc., 468 F. Supp. 2d 1210, 1231 (D. Hawai`i 2006) (applying same elements under § 378-2). "Conduct constituting a 'protected activity' includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and 'engaging in other activity intended to oppose an employer's discriminatory practices.'" Global Horizons, 904 F. Supp. 2d at 1088 (quoting Raad, 323 F.3d at 1197).  To establish a causal link, a plaintiff must show that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).  Further, it is Plaintiff's burden to show that the individual who subjected him to the adverse action was aware of the protected activity. See Miller

24

<u>v. State of Cal.</u>, 212 F. App'x 592, 593 (9th Cir. 2006) (citing

<u>Allen v. Iranon</u>, 283 F.3d 1070, 1076 (9th Cir. 2002)).

There is ample evidence that Plaintiff complained to

Martinez, Geltmacher, and Sullivant. But there is no evidence

that any of these complaints were protected under Title VII, that

is, that they related to discrimination, or that they caused an

adverse employment action.

First, the vast majority of his complaints had to do

with purported range safety violations, which were work related,

and thus not protected. Plaintiff does, however, argue he

reported "differential treatment of women" to Sullivant. [Hodges

Decl. at ¶ 8.] But, other than his self-serving statement, he

does not provide any corroborating evidence or details that

permit the Court to ascertain whether, in fact, this complaint

was protected. <u>See</u> <u>Hernandez</u>, 343 F.3d at 1116.[16]

---

[16] Plaintiff also offers Exhibit 4, which is an Exit
Interview dated August 27, 2010, that Plaintiff presumably was
required to fill out when Stanley took over the contract with the
Navy from Lockheed Martin. [Mem. in Opp. to Mabus Motion at 3.]
It appears that Plaintiff includes this document since, on the
third page, he checked a box responding "yes" to the question of
whether he was "aware of any violations of the Lockheed Martin
Code of Ethics and Standards of Conduct that you have not
reported to your manager or company Ethics Officer." [Hodges
Decl., Exh. 4 at 3.] However, Plaintiff does not include any
details, as Lockeheed Martin required, so the Court is unable to
ascertain what exactly was violated and by whom. Further, unlike
the sex discrimination that Plaintiff states he did report to
Sullivant, the question asks for violations that he did **not**
report.

Second, even if some of his purported discrimination complaints were covered, they could not have been the cause of the adverse actions. For instance, Plaintiff states that he "spoke with Shaun Sullivant and Ms. Davidson in March 2011 concerning discrimination." Hodges Decl. at ¶ 30; see also id., Exh. 7 (compilation of documentation of complaints) at CGI000946-947 (undated complaint regarding sexual harassment by Martinez). But he admits in an email with Vanessa Davidson in the CGI human resources department that the discussion occurred "around March 30th[,]" [id., Exh. 7 at CGI00222,] which was after he was already put on the PIP. Similarly, Plaintiff offers an email, dated April 21, 2011, in which he reports that he was chastised by Martinez for using a truck in the training area without permission and writes that this "is starting to be harassment." [Id., Exh. 8.] This too occurred after the PIP had already been implemented. Thus, none of these complaints support a causal connection. See Nassar, 133 S. Ct. at 2534 (requiring but-for causation).

There is no genuine issue of material fact that Plaintiff engaged in protected activity and that the activity led to an adverse employment action. The Court therefore GRANTS the Motions insofar as Plaintiff claims retaliation against Mabus and CGI.

Based on the foregoing findings - that Plaintiff fails to create a genuine issue of material fact as to discrimination, a hostile work environment, or retaliation – the Court DISMISSES Counts I, II and III against both Mabus and CGI.[17]

## II.  **Constitutional Claims**

Plaintiff also argues, in Count V, that Mabus and CGI violated his First and Fifth Amendment rights by: putting him on the PIP and terminating him in retaliation for him challenging range safety procedures; and failing to provide him with a thirty-day review as part of the PIP.  [Mem. in Opp. to Mabus Motion at 31-32.]  As an initial matter, Mabus is not subject to suit under 28 U.S.C. § 1983 since Plaintiff sued him in his official capacity as Secretary of the Navy.  See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) (holding that a claim against the federal government for a constitutional violation "can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity").

Plaintiff does not dispute this fact, and instead appears to request the Court to add back in Martinez and

_____

[17] Since the Court finds that Plaintiff has failed to create a genuine issue of material fact as to the substance of his discrimination and retaliation claims, it does not reach the issue of whether the government contractor defense applies, or whether the Navy and CGI were joint employers for the purpose of the Motions.

Geltmacher.  <u>See</u> Mem. in Opp. to Mabus Motion at 31-32 ("In the event this court rules that the individuals must be named for purposes of the Constitutional violations, Plaintiff asks leave to amend and include them only for the Constitutional violations.").  The Court denies the request insofar as Plaintiff stipulated to the dismissal of Martinez and Geltmacher, <u>see</u> <i>infra</i> n.2, the deadline for adding parties passed well over a year ago, [Scheduling Order, filed 11/28/12 (dkt. no. 19),] and, in any event, the Court finds that Defendants are entitled to summary judgment on these claims.

"'To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law.'"  <u>Esparza v. Cnty. of Los Angeles</u>, 527 F. App'x 638, 639 (9th Cir. 2013) (quoting <u>Long v. Cnty. of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006)).  CGI argues that it cannot be held liable under § 1983 since it is a private entity.  The Court reserves ruling on this issue since, even assuming <i>arguendo</i>, that it was, Plaintiff does not make a prima facie case for a violation of either a First or Fifth Amendment violation.

**A.    <u>First Amendment</u>**

"To state a First Amendment claim against a public

28

employer, an employee must show: (1) the employee engaged in constitutionally protected speech; (2) the employer took adverse employment action against the employee; and (3) the employee's speech was a substantial or motivating factor for the adverse action." Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 803 (9th Cir. 2009) (citations and internal quotation marks omitted).

Plaintiff argues that his First Amendment claim is "based upon [his] complaints of Range Safety violations and concerns." [Mem. in Opp. to Mabus Motion at 32.] The United States Supreme Court has held that when employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Although this Court has found that the evidence supports Defendants' argument that Plaintiff was not performing his job satisfactorily because of his repeated and insubordinate complaints about range safety, it is undisputed that such complaints were made pursuant to his duties. See, e.g., Martinez Decl., Exh. 1 (Range Safety Specialist Responsibilities) at 1 (requiring Plaintiff to "ensure range safety procedures in support of range operations, according to regulations and applicable guidelines, policies and procedures").

Since, by his own admission, his First Amendment claim is based on reporting range safety violations, and that speech is part of his job description, the Court CONCLUDES there is no genuine issue of material fact that Plaintiff engaged in constitutionally protected speech. The Court therefore GRANTS the Motions as to Plaintiff's claim for First Amendment violations.

**B.** **Fifth Amendment**

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Shanks v. Dressel, 540 F.3d 1082, 1090-91 (9th Cir. 2008) (alteration in Shanks) (citation omitted).

Plaintiff argues that he had a property interest in "keeping [his] job." [Mem. in Opp. to CGI Motion at 36.] Defendants dispute this contention. Both parties cite to Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), to support their positions.

In Roth, the Supreme Court held that an assistant professor had no constitutional right to a hearing as to why Wisconsin State University decided not to rehire him after his one-year term was complete. Id. While the case is not directly on point, it does provide some support for Defendants' position

because it held that: an individual is not necessarily deprived of a liberty interest when "he simply is not rehired in one job but remains as free as before to seek another[;]" and property interests "stem from an independent source such as state law[.]" Id. at 575, 577. In applying Roth, the Ninth Circuit has held:

> A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2708, 33 L. Ed. 2d 548 (1972). Laws, rules or understandings derived from independent sources such as state law create such claims of entitlement. Id. However, a mere expectation that employment will continue does not create a property interest. Id. If under state law, employment is at-will, then the claimant has no property interest in the job. Id.

Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Hawai`i employs the "at-will doctrine." As the Hawai`i Supreme Court has explained:

> We therefore reaffirm the general principle that, in the absence of a written employment agreement, a collective bargaining agreement, or a statutorily-conferred right, employment is at-will. Such at-will employment is, by definition, . . . terminable at the will of either party, for any reason or no reason at all. As such, parties to an at-will employment contract enter into the contract with full knowledge that the employment is for an indefinite duration and can terminate at the will of either party. Correlatively, an employment contract of indefinite duration will generally be construed as giving rise to an at-will employment relationship and as therefore terminable at the will of either party for any reason or no reason.

31

<u>Shoppe v. Gucci Am. Inc.</u>, 94 Hawai`i 368, 383, 14 P.3d 1049, 1064

(alteration in <u>Shoppe</u>) (citations and internal quotations

omitted).  Plaintiff does not point to any employment document

that confers any additional right to his undisputed, at-will

employment.  Thus, the Court FINDS that he did not have any

property right in his RSS position for CGI.  Since Plaintiff has

failed to create a genuine issue of material of fact as to

whether he had a property right to his continued employment by

CGI, the Court GRANTS the Motions as to Plaintiff's Fifth

Amendment claim.[18]

Since he fails to create genuine issues of material

fact as to both constitutional claims, the Court GRANTS summary

judgment in favor of the Defendants on Count V.

## CONCLUSION

On the basis of the foregoing, Mabus's Motion for

---

[18] Further, Plaintiff offers no facts, argument, or legal
analysis as to how he was denied process.  <u>See</u> <u>Shanks</u>, 540 F.3d
1090-91 (requiring a plaintiff to prove "lack of process").  In
the PIP, CGI gave Plaintiff clear expectations and the warning
that "[f]ailure to show immediate and sustained improvement with
your overall performance at anytime during this plan period or
after, will subject you to further disciplinary action, up to and
including termination of your employment."  [PIP at 1.]
Plaintiff does not argue that he did not receive the PIP or did
not understand it.  Instead, he points to language that, "[a]
formal review will be arranged 30 days from the date of this
letter."  The letter is dated March 28, 2011.  Just days after
thirty days elapsed, on May 5, 2011, Martinez reported to
Geltmacher that Plaintiff was "back to his tactics."  [Tardiness
Email.]  Thus, between the clear expectations, and the warning,
there appears to have been ample process.

Summary Judgment and Dismissal, filed June 24, 2014, and CGI's

Motion for Summary Judgment, filed June 25, 2014, are HEREBY

GRANTED.  There being no remaining claims in this case, the Court

DIRECTS the Clerk's Office to enter judgment and close the case

on **November 21, 2014**, unless Plaintiff files a timely motion for

reconsideration of the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 31, 2014.



     /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RODNEY HODGES VS. CGI FEDERAL DEFENSE & INTELLIGENCE, ET AL;
CIVIL 12-00420 LEK-BMK; ORDER GRANTING DEFENDANT RAY MABUS'S
MOTION FOR SUMMARY JUDGMENT AND DEFENDANT CGI FEDERAL INC.'S
MOTION FOR SUMMARY JUDGMENT AND DISMISSAL**